UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 10 2017 ★

LONG ISLAND OFFICE

------------------------------------------------------------x

RAPID ANESTHESIA SOLUTIONS, P.C.
and CHARLES STARKE, M.D.,

Plaintiff

vs.

JOHN H. HAJJAR, SOVEREIGN HEALTH SYSTEM,
MONARCH ANESTHESIA, Inc. a/k/a Monarch Anesthesia
of Jersey City, LLC,

Defendant

------------------------------------------------------------x

Index No.

CV-17 4705

MATSUMOTO, J.

BLOOM, M.J.

COMPLAINT

1. The Plaintiffs are a corporation duly licensed to do business in the State of New York, and Dr. Charles Starke is the sole stockholder of the professional corporations.

2. The Defendant, JOHN H. HAJJAR, M.D. is a resident of the State of New Jersey and an Officer and CEO of Sovereign Health System group, a corporation authorized to do business in the State of New Jersey.

3. Monarch Anesthesia, Inc. is a corporation authorized to do business in the State of New Jersey (hereinafter referred to as "Monarch"), part of the Sovereign Health System group. Sovereign Health System in April ,2015 received FORTY MILLION ($40,000,000.00) DOLLARS investments none of which has been accounted for to Monarch.

4. On or about August 15, 2011, the Plaintiffs and Defendant, Monarch, entered into an operating agreement wherein Rapid Anesthesia Solutions, P.C. (hereinafter referred to as RAS) would provide anesthesia medical services to Monarch, who provided these services to Sovereign Health Medical Group. (SHMG) to the Fall of 2015. A copy of the Operating Agreement is attached as EXH. A.

The agreement further provided that RAS were to be paid for the services provided and

> "RAS receive an amount equal to 45% of the Monarch 'profit' at the SURGICARE, JERSEY CITY, NJ site and 40% for an additional SURGICARE site services have been provided for in addition to the billed amount of $1,600./per day for each room, payable every three(3) months".

5. Jurisdiction is based on diversity.

6. Upon information and belief, the Defendants have sold the contract of Monarch to Sovereign Health Systems, Inc. without consent to the Plaintiffs for the sale, and Monarch has not rendered to RAS their respective percentage of the Monarch profit.

7. The Plaintiffs claim herein that the Defendants are not abiding by their Agreement by not providing payment for services of the Plaintiff nor his respective interest in the profit of the Defendants.

8. Upon information and belief, past distributions made by Defendants and/or taken by one or more members have not complied with the foregoing provisions resulting in unequitable distortions in the capital account balances.

9. The individual Plaintiffs will suffer irreparable harm if inequitable sharing profits and distributions are allowed to continue and a fiduciary duty to avoid self-dealing at the expenses of Monarch and its members and to avoid and prevent the diversion of Monarch opportunities, income and profits rightfully belonging to the Plaintiffs.

10. The Defendants have possession and control of the business records.

11. The individual Plaintiffs have a right to inspect the books and records of the Defendants pursuant to the Operating Agreement.

12. The individual Plaintiffs have no other remedy at law and respectfully seek a declaratory judgment as to the respective rights of the parties and their right to inspect the books and accounts and as to determination of the amount of the proper balances in each parties capital accounts as of the date hereof.

13. No other prior application has been made to this Court or any other court in this or any other jurisdiction for the relief requested herein.

14. Upon information and belief, Defendant, DR. HIJJAR, breached his fiduciary duties as a managing member by his acts, including without limitation, the following:

   (a) On and after January 1, 2011, Defendant failed to pay Plaintiffs for services in New Jersey to Monarch;

   (b) On and after January 1, 2011, Defendant, failed to properly account for income and disbursements of Monarch and to maintain accurate books and records reflecting the business of Monarch, the exact amount which is presently unknown to Plaintiffs but believed to exceed ONE MILLION ($1,000,000.00) DOLLARS;

   (c) On and after January 1, 2011, Defendant, JOHN H. HAJJAR, M.D., acting in concert with other persons, has caused assets of Monarch to be wasted and diverted to the benefit of Defendants and other;

   (d) On and after January 1, 2011, Defendant, DR. HAJJAR, engaged in unauthorized acts and conduct in the management of the business and affairs of Monarch by usurping the joint authority of the members and acting alone for his benefit and the benefit of others;

   (e) engaging in transactions where Defendant, DR. HAJJAR, had a conflict of interests without authority to do so; and

   (f) treating the Monarch bank accounts and funds as Defendants personal "piggybank" and converting said funds for the benefit of Defendants and the benefit of others.

15. Upon information and belief, Defendant, JOHN H. HAJJAR, M.D., is an individual residing in the State of New Jersey with offices 85 Harristown Rd., Glen Rock, New Jersey.

### ACTION FOR DECLARATORY JUDGMENT

16. The individual Plaintiffs repeat, reiterate and re-allege each and every allegation as fully set forth in paragraphs "1" thru "15".

17. Defendants had a duty to skillfully, diligently, carefully and honestly administer the affairs of Monarch, to exercise due care, skill and diligence in conducting the Monarch business, to exercise independent judgment in the performance of their duties; to safeguard the property and effects of Monarch; to prevent said assets from being wasted, squandered, looted and stolen; to make and publish true and accurate accounts and statements of affairs of Monarch from to time; and to faithfully and diligently perform all other duties.

18. By reason of his status as a member and his assumed role as *defacto* managing member of Monarch, Defendant, DR. HAJJAR, owed Monarch a fiduciary duty.

19. Upon information and belief and on and after January 1, 2011, Defendant, DR. HAJJAR, acting in concert with the other Defendants, has caused funds of the Defendants to be diverted and deposited into bank accounts under his exclusive control or under the control of the Defendants and others unknown to Plaintiffs.

20. Prior to the commencement of this action, the individual Plaintiffs have demanded that Defendant, DR. HAJJAR, account for and discontinue his conduct and actions being complained about herein, but Defendant, DR. HAJJAR, has failed to do so or to render an account for his past actions.

21. Upon information and belief, the acts of Defendant, DR. HAJJAR, as herein alleged, were deliberate, intentional, fraudulent, willful and malicious in violation of his statutory and common law fiduciary duties and have resulted in significant damages to the Plaintiffs, the exact amount of which is unknown.

22. Plaintiffs have no adequate remedy at law and seek an Order directing the Defendant to render an accounting of his actions since January 1, 2011.

## ACTION FOR BREACH OF CONTRACT

23. The Plaintiffs repeat, reiterate and re-allege each and every allegation as fully set forth in paragraphs "1" thru "22".

24. The individual Plaintiffs bring this action individually under common law and pursuant to the provisions of the Operating Agreement.

25. Defendants have breached their obligations under the provisions of the Operating Agreement by failing to abide by the terms and provisions of the Operating Agreement. Defendants have caused damage to the Plaintiffs.

26. Defendants have damaged the individual Plaintiffs in an amount, now believed to exceed ONE MILLION ($1,000,000.00) DOLLARS, which amount is presently unknown to them, and Defendants have caused damage to the Plaintiffs in an amount presently unknown but believed to exceed ONE MILLION ($1,000,000.00) DOLLARS.

### ACTION FOR CONVERSION

27. The Plaintiffs repeat, reiterate and re-allege each and every allegations as fully set forth in paragraphs "1" thru "26" herein.

28. Upon information and belief, and on or about January 1, 2011, and to the date hereof, Defendants, without any authorization to do so, withdrew funds from the Defendants bank accounts in a cumulative amount presently unknown but estimated to exceed the sum of ONE MILLION ($1,000,000.00) DOLLARS and converted said funds for their personal use.

29. Upon information and belief, the Defendants have engaged in similar prior conduct, the specifies of which are presently unknown to Plaintiffs.

30. As a result of the aforesaid conduct in violation of the provision of the law, the Plaintiffs have been damaged in the sum of at least ONE MILLION ($1,000,000.00) DOLLARS, the exact sum being unknown until the completion of the accounting.

## ACTION FOR UNJUST ENRICHMENT

31. The Plaintiffs repeat, reiterate and re-allege each and every allegation as fully set forth in paragraphs "1" thru "30" herein.

32. Upon information and belief and on or about January 1, 2011 and to the date hereof, the Defendants, without authorization to do so, have unjustly enriched themselves by receiving funds withdrawn from the bank accounts in an amount estimated to exceed ONE MILLION ($1,000,000.00) DOLLARS for which they had no entitlement to receive and convert said funds for their personal use.

33. Upon information and belief, the Defendants have engaged in similar prior conduct and may attempt to do so hereafter, the specifics of which are presently unknown to the Plaintiffs.

34. As a result of the aforesaid conduct in violation of the provisions of the Operating Agreement, the Plaintiffs have been damaged in the sum of ONE MILLION ($1,000,000.00) DOLLARS, the exact sum being unknown until the completion of the accounting.

WHREFORE, Plaintiffs demand judgment against the Defendants granting the following relief:

a. a declaration on the respective ownership interests of the respective members of the Defendants and the Plaintiffs right to inspect and copy the books and records of the Defendants;

b. an accounting by the Defendant, Monarch, of all of the assets, liabilities, income and expenses of Monarch since January 1, 2011;

c. a judgment against the Defendants in a sum to be determined for unjust enrichment and directing said Defendants to reimburse Plaintiffs for all losses incurred by the Plaintiffs which arise from said Defendants' breaches of their duties;

d. judgments in favor of the individual Plaintiffs and against the Defendants for all damages suffered in such amount as determined by this Court;

e. trial by jury; and

f. for such other and further relief as this Court deems just and proper together with legal fees and an award of costs and disbursements of this action.

Dated: Bayside, New York
       August 10 2017

_____
PATRICK F. BRODERICK, ESQ.
Attorney for Plaintiffs
42-40 BELL BLVD., STE. 601
BAYSIDE, NY  11361
718-229-6070; 718-224-2938 FAX

**EXHIBIT A.**

OPERATING AGREEMENT
BETWEEN
MONARCH ANESTHESIA, INC.
AND
RAPIID ANESTHESIA SOLUTIONS, P.C.

This Operating Agreement dated as of _____ is between MONARCH ANESTHESIA, INC. (hereinafter referred to as "MA") and RAPID ANESTHESIA SOLUTIONS, P.C., (hereinafter referred to as "RAS").

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other goods and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree that this Agreement shall constitute the Operating Agreement of the parties:

1. Business and Purpose: The purpose of this agreement is to have MA retain exclusively RAS to render medical anesthesia services to MA at the SURGICARE SURGERY CENTER hereinafter referred to as SURGICARE.

2. RAS shall be the sole provider to MA for these services provided at the SURGICARE sites.

3. The Agreement shall be in perpetuity.

   But each party may "opt out" of this agreement upon ninety (90) days written notice to the other party at the address provided.

4. RAS recognizes its responsibility to provide medical anesthesia coverage for MA to SURGICARE as required as needed.

5. The parties agree that so long as this agreement is in effect, Dr. Charles Starke, M.D. shall be the sole Director of Anesthesia at SURGICARE.

6. MA agrees to pay RAS the following sums of money:

   (a) Sixteen Hundred ($1600.00) per day for each "room" covered by RAS at the SURGEM. A day is defined as availability and/or performing anesthesia at SURGICARE for an eight (8) hour period. RAS is guaranteed one room per day per week.

   (b) Any services provided by RAS after the eight (8) hours will be paid by MA to RAS at the overtime rate as agreed upon.

   (c) RAS is to receive the sum equivalent of two (2) weeks paid vacation every six (6) months, i.e. if RAS performs the services provided, RAS will be paid Sixteen Thousand Dollars ($16,000.00) upon commencement of his two (2) week vacation.

   (d) RAS is to receive an amount equal to 45% of the Monarch's "profit" at the SURGICARE, JERSEY CITY, NJ site and 40% for an additional SURGICARE site services have been provided for in addition to the billed amount of $1,600./per day for each room, payable every three (3) months.

   "Profits" and "Losses" means for each fiscal year or other period an amount equal to the Company's taxable income or loss for such year or period, determined in accordance with Section 703(a) of the Code (for this purpose, all items of

income, gain, credit, loss or deduction required to be stated

separately pursuant to Section 703(a)(1) of the Code shall

be included in taxable income or loss adjusted in

accordance with the Regulations.

7. MA agrees to allow RAS to treat and bill separately and privately for the professional component for the "regional anesthesia" limited to post-operative pain provided for SURGICARE and MA patients.

MA will not bill these extra medical services and will assist RAS in billing for these "extra" medical services.

8. RAS and MA shall while under agreement with each other and for a period of two (2) years following RAS' withdrawal or termination of this agreement for any reason:

( a) Induce or attempt to influence any health care facility, health care organization, physician, or other licensed health pro-fessional, or any business or entity with a relationship with each other developed during the course of this agreement to terminate or modify that relationship.

9. Each party acknowledges that the terms contained in Article 8 are necessary for the reasonable and proper protection of the parties interests, and are reasonable in respect of such matter, length of time and geographical area.

10. Confidentially: At no time during the term of this agreement or thereafter shall RAS use or disclose MA's systems, methods, designs, procedures, books and

"Confidential Information"), all of which constitute valuable, special and unique assets of the MA. Each member shall treat Confidential Information as confidential, shall make all reasonable efforts to preserve its confidentiality to the same extent it would preserve its own Confidential Information, and shall not duplicate or disclose such Confidential Information, except to advisors, attorneys, accountants, banker, consultants, boards of directors and affiliates as the parties in their reasonable discretion, shall deem necessary and who need to know such information for legitimate business purposes. Except for such disclosure as may be necessary or appropriate and such public or other disclosures as may be required by court order or any state or federal law or regulation to which a party is subject or in order to defend litigation, parties agree to maintain in confidence the existence and terms of this agreement and no party shall issue any press release or public statement in connection with their work without the party's prior written consent of each other.

Notwithstanding the foregoing, this Section shall not apply to disclosure of information that is reasonably necessary for the recruitment of additional physician(s) who will be required to execute and deliver a confidentiality agreement to the parties.

11. If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of any of the restrictive covenants set forth in this Article 8 is unenforceable in accordance with its terms in a particular jurisdiction, such covenant shall not terminate; instead, such covenant shall be deemed amended to the extent required to render it valid and enforceable in

such jurisdiction and such court or tribunal is hereby authorized and directed to amend the restrictive covenants set forth in this Article 8 only to the extent that such court or tribunal determines such an amendment is necessary to make it valid and enforceable in said jurisdiction.

12. Patient Lists: No party shall, while a party, or after withdrawal, disability, termination or expulsion, utilize the list of patients for any purpose, including, without limitation, for marketing of products or services that are unrelated to the business of the parties.

13. Each party agrees that damages at law would be an insufficient remedy for the company in the event any party violates these provisions, and that the company and the other parties shall be entitled to, among other remedies, make an application to a court of competent jurisdiction to obtain specific performance or to enjoin the continuing breach of such provisions. By seeking or obtaining such relief, the aggrieved party will not be precluded from seeking or obtaining any other relief to which such party may be entitled.

14. Miscellaneous:

(a) Binding Effect: Expect as otherwise provided herein, this agreement shall be binding upon and shall inure to the parties hereto and their permitted successors and assigns.

(b) No Waiver: No waiver of any breach or condition of this agreement shall be deemed to be a waiver of any other condition or subsequent breach, whether of like or different nature.

(c) Entire Agreement: This agreement constitutes the entire agreement between the parties and the subject matter contained herein and supersedes all prior agreements and understandings with respect to the subject matter hereof.

(d) Governing Law: This agreement and the obligations of each party shall be governed by the laws of the State of New Jersey without giving effect to the principles of conflict of laws.

(e) Further Documents: Termination: Each party hereby agrees that they will execute and/or deliver such further instruments, including but not limited to personal financial statements, and such further acts and things as may be necessary or desirable to carry out the purposes of this agreement.

(f) Invalidity: In the event any provision of this agreement shall be held to be invalid, the validity of the remaining provisions of this agreement shall not in any way be affected hereby.

(g) Amendments: This agreement may not be amended, modified or otherwise or varied, except by an instrument in writing.

15. Execution: Counterparts: This agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument. Delivery of a copy of this agreement bearing an original signature by facsimile transmission, by electronic mail in "portable document format" (pdf) form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

16. **Representation:** BY EXECUTING THIS AGREEMENT, EACH PARTY REPRESENTS AND WARRANTS THAT HE/SHE/IT HAS ENTERED INTO THIS AGREEMENT BASED UPON THEIR INDEPENDENT JUDGMENT, KNOWLEDGE AND EXPERTISE, AS WELL AS ON THE ADVICE OF SUCH OTHER PROFESSIONAL PERSONS, LEGAL COUNSEL OR FIRMS CONSULTED BY THEM.

IN WITNESS WHEREOF, the Parties have caused the Operating Agreement to be executed as of the date first above written.

MONARCH ANESTHESIA, INC.    RAPID ANESTHESIA SOLUTIONS, P.C.

By: *[signature]*    By: *[signature]* MD

Name: John H. Hajjar    Name: Charles H. Starke II

Title: CEO    Title: President

OPERATING AGREEMENT
BETWEEN
MONARCH ANESTHESIA, INC.
AND
RAPID ANESTHESIA SOLUTIONS, p.c.
*AMENDMENT*

This Operating Agreement dated 8/15/11 is between MONARCH ANESTHESIA, INC. (hereinafter referred to as "MA") and RAPID ANESTHESIA SOLUTIONS, p.c. (hereinafter referred to as "RAS") is hereby amended.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other goods and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree that this Agreement shall constitute the Operating Agreement of the parties:

1. Paragraph 3 of the Operating Agreement is amended to extend the Agreement from Feb. 15, 2012 to Feb. 14, 2013.

IN WITNESS WHEREOF, the Parties have caused this Amendment to the Operating Agreement to take effect as of Feb. 15, 2012.

MONARCH ANESTHESIA, INC.   RAPID ANESTHESIA SOLUTIONS, P.C.

By: _[signature]_                By: _[signature]_

Name: John H Najjim             Name: Charles H. Starke

Title: _____           Title: President